RENDERED: OCTOBER 13, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0965-MR

LEXINGTON ALZHEIMER'S
INVESTORS, LLC D/B/A THE
LANTERN AT MORNING POINTE
ALZHEIMER'S CENTER OF
EXCELLENCE; BROOKE GRIFFITH,
IN HER CAPACITY AS EXECUTIVE
DIRECTOR OF THE LANTERN AT
MORNING POINTE OF LEXINGTON;
GREG A. VITAL; INDEPENDENT
HEALTHCARE PROPERTIES, LLC;
AND J. FRANKLIN FARROW                                    APPELLANTS


                    APPEAL FROM FAYETTE CIRCUIT COURT
v.          HONORABLE KIMBERLY N. BUNNELL, JUDGE
                    ACTION NO. 21-CI-02030


SANDRA NORRIS, INDIVIDUALLY
AND AS ADMINISTRATRIX OF THE
ESTATE OF RAYFORD CHARLES
NORRIS                                                            APPELLEE


                                OPINION
                                AFFIRMING

                            ** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; GOODWINE AND TAYLOR,
JUDGES.

THOMPSON, CHIEF JUDGE:  Lexington Alzheimer's Investors, LLC d/b/a the Lantern at Morning Pointe Alzheimer's Center of Excellence (hereinafter referred to as the Lantern), along with other related appellants appeal from an order of the Fayette Circuit Court denying their motion to compel arbitration.  We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

Sandra Norris was the wife of Rayford Charles Norris.  Mr. Norris was a resident at the Lantern from October 25, 2019, until March 6, 2020.  Mr. Norris died on August 9, 2020.  On July 8, 2021, Ms. Norris filed the underlying action alleging that Mr. Norris received negligent care while at the Lantern which resulted in his death.  Appellants then moved to compel arbitration because Ms. Norris signed a mandatory arbitration agreement[1] on Mr. Norris's behalf when he was admitted to the Lantern.  The trial court ultimately held that Ms. Norris did not have the authority to enter into the arbitration agreement on Mr. Norris's behalf as executing such an agreement was not a health care decision.  The trial court denied Appellants' motion to compel arbitration and this appeal followed.

---

[1] Mr. Norris would not have been able to be treated at the Lantern if the arbitration agreement was not executed.

## ANALYSIS

"It is well established that construction and interpretation of a written instrument are questions of law for the court. We review questions of law *de novo* and, thus, without deference to the interpretation afforded by the circuit court." *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App. 1998) (citations omitted).

Appellants argue on appeal that Ms. Norris did have the authority to enter into the arbitration agreement on Mr. Norris's behalf. They base this argument on Kentucky Revised Statutes (KRS) 311.631(1)(c) which states:

> (1) If an adult patient whose physician has determined that he or she does not have decisional capacity has not executed an advance directive, or to the extent the advance directive does not address a decision that must be made, any one (1) of the following responsible parties, in the following order of priority if no individual in a prior class is reasonably available, willing, and competent to act, shall be authorized to make health care decisions on behalf of the patient:
>
> . . .
>
> (c) The spouse of the patient[.]

Appellants' argument is that this statute authorized Ms. Norris to enter into the arbitration agreement on Mr. Norris's behalf because it was a health care decision.

Courts in this Commonwealth have held that when an arbitration agreement is presented as a condition of admission to a medical facility, entering into the agreement can be considered a health care decision. *See LP Louisville*

-3-

*East, LLC v. Patton*, 651 S.W.3d 759, 770 (Ky. 2020), *as modified on denial of reh'g* (Apr. 29, 2021); *Ping v. Beverly Enterprises*, 376 S.W.3d 581, 593 (Ky. 2012). In other words, if an arbitration agreement is mandatory in order to be treated at a medical or nursing home facility, as it was in this case, then entering into the agreement can be considered a health care decision. Appellants argue that KRS 311.631(1)(c) and cases like those cited above indicate that the arbitration agreement in this case is valid.

The cases cited by Appellants and those found during this Court's research concern arbitration agreements as they relate to a power of attorney, but there is no power of attorney in this case. An illustration of the cases found during our research is still advisable. In *Patton*, *supra*, Tommy Patton was admitted into a long-term nursing home facility in Louisville, Kentucky. 651 S.W.3d 759. Upon Tommy's admission into the facility, Kenneth Patton, his son, signed a mandatory arbitration agreement as Tommy's power of attorney. The power of attorney documents gave Kenneth "all powers . . . necessary . . . to provide for [Tommy's] support, maintenance, [and] health." *Id.* at 768.

A few weeks after being admitted into the facility, Tommy died. After Tommy's death, Kenneth filed suit against the facility. The facility then moved to compel arbitration due to the agreement executed by Kenneth. The Kentucky Supreme Court held that "when an agreement to arbitrate is presented as

a condition of admission to a nursing home, unless otherwise agreed, a power of attorney expressing general authority to make necessary health care decisions includes the incidental or reasonably necessary authority to enter that agreement." *Id.* at 770.

Appellants argue that KRS 311.631(1)(c) allows Ms. Norris to make health care decisions on her husband's behalf just like the power of attorney allowed Kenneth to make health care decisions for his father. Appellants believe that because the arbitration agreement at issue here was mandatory for Mr. Norris to be admitted to the Lantern, it was a necessary health care decision. We disagree. The power of attorney in *Patton* gave Kenneth broad and general powers to provide for the health of his father. According to the Kentucky Supreme Court, that included entering into a mandatory arbitration agreement in order to have him treated at a nursing home facility. In our opinion, the statute at issue here does not grant such a broad array of powers.

KRS 311.631(1)(c) allows a wife to make health care decisions on behalf of her husband; however, KRS 311.621(8) defines "health care decisions" as "consenting to, or withdrawing consent for, any medical procedure, treatment, or intervention[.]" We believe this is a narrow definition and does not encompass the ability to enter into an arbitration agreement, even if the agreement was required to be admitted into a nursing home facility. The legislature chose not to

grant one person broad or general powers over another person's health care decisions. The legislature chose to allow a person to consent to medical procedures, treatments, or interventions on behalf of another person. Entering into an arbitration agreement is not a medical procedure, treatment, or intervention.

## **CONCLUSION**

Based on the foregoing, we affirm the judgment of the trial court. KRS 311.631(1)(c) did not allow Ms. Norris to enter into an arbitration agreement on her husband's behalf. Entering into the arbitration agreement was not a health care decision as defined by KRS 311.621(8). A power of attorney granting general health care authority may encompass the ability to enter into an arbitration agreement; however, the health care decisions granted by the statutes discussed above do not include this power.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Paul A. Dzenitis
Emily W. Newman
Corey J. Taylor
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANT LEXINGTON
ALZHEIMER'S INVESTORS, LLC
D/B/A THE LANTERN AT
MORNING POINTE ALZHEIMER'S
CENTER OF EXCELLENCE:

Emily W. Newman
Louisville, Kentucky

BRIEF FOR APPELLEE:

Tyler S. Stewart
Lexington, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Tyler S. Stewart
Lexington, Kentucky

Chad Gardner
Lexington, Kentucky

Jake Grey
Lexington, Kentucky